Briley v. Nussbaum.

No. 27,057.

ELMER C. BRILEY et al., *Appellees*, v. MARTIN P. NUSSBAUM et al.,
*Appellants*.

SYLLABUS BY THE COURT.

1. PARENT AND CHILD—*Action for Loss of Services—Amount of Recovery.*
This court cannot say that a verdict for $6,305 in favor of the parents of a
healthy, intelligent, affectionate, industrious, obedient girl between seven
and eight years old against those who have negligently caused her death is
excessive.

2. SAME—*Action for Loss of Services—Instructions—Right to Anticipate Pe-
cuniary Benefits.* An instruction touching the right of parents to anticipate
that they would receive help and pecuniary benefits from a dutiful child
as long as she lived up to the death of the last surviving parent, examined,
and held not prejudicial.

3. TRIAL—*Instructions—Necessity of Request for Modification.* Where an in-
struction correctly states the law applicable to the facts shown by the evi-
dence, the litigant complaining of the instruction and desiring a modifica-
tion of it or an additional instruction must request such modification or
such additional instruction.

4. SAME—*Correction of Error—Withdrawal of Evidence that Defendant Pro-
tected by Insurance.* In an action for damages for wrongful death, a judg-
ment will not be reversed on account of the plaintiff's showing in the in-
troduction of his evidence that the defendant had insurance covering his
liability for the death where that evidence on the application of the de-
fendant is withdrawn from the consideration of the jury.

5. SAME—*Reception of Evidence—Necessity of Objection.* Error cannot be
based on the admission of evidence introduced without objection.

6. MOTOR VEHICLES—*Negligent Speed—Evidence—Skidmarks.* It was not er-
ror for the court to instruct the jury that, in determining the rate of speed
at which the bus was traveling, the length of the skid marks made by the
wheels of the bus might be taken into consideration.

7. NEGLIGENCE—*Special Questions—Evidence.* The answers to special ques-
tions numbered 4, 5, 6, 7, 8, and 9 were sustained by evidence.

8. SAME—*Pleading and Proof.* The answer to special question numbered 3
was embraced within the allegations of the petition, and the answer and
the verdict of the jury were supported by evidence.

9. MOTOR VEHICLES—*Liability for Death—Instruction as to Statutory Regula-
tion of Speed.* It was not error for the court to instruct the jury concern-
ing the statute regulating the speed of motor vehicles at street crossings in
cities.

Appeal and Error, 3 C. J. p. 808 n. 91; 4 C. J. p. 989 n. 16; 2 R. C. L. 77.
Death, 17 C. J. p. 1350 n. 7; L. R. A. 1916C 820. Motor Vehicles, 28 Cyc. pp.
47 n. 16, 49 n. 47. Parent and Child, 29 Cyc. p. 1650 n. 69. Trial, 38 Cyc. pp.
1693 n. 55, 1925 n. 72; 14 R. C. L. 797.

10. SAME—*Liability for Death—Instruction as to Ordinance Regulating Operation of Vehicle.* It was not error for the court to instruct the jury concerning an ordinance of the city of Wichita regulating the operation of vehicles in that city.

11. NEGLIGENCE—*Contributory Negligence—Seven-year-old Child—Jury Question.* Whether or not the deceased, a girl between seven and eight years old, was guilty of contributory negligence was a question of fact to be determined by the jury.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed January 8, 1927. Affirmed.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellants.

*O. A. Keach,* of Wichita, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The defendants appeal from a judgment in favor of the plaintiffs for damages caused by their daughter, Hazel Briley, being killed in Wichita by a bus driven by the defendant Martin P. Nussbaum, the bus being then operated by the defendants Martin P. Nussbaum and George F. Nussbaum.

1. Defendants claim that the verdict in favor of the plaintiff was excessive. The verdict was for $6,305, and judgment was rendered for that amount. At the time of her death, Hazel Briley was between seven and eight years of age. She was healthy, intelligent, affectionate, industrious, and obedient. Elmer C. Briley, the father of Hazel Briley, was then forty-two years old, and Vilena Briley, the mother, was thirty-eight years old. There is no way by which the damages sustained by parents whose child is killed in an automobile accident can be measured; $305 of the verdict was for expenses incident to the death of the child. This court cannot say that the verdict for $6,000 in favor of the parents for the loss of a child, such as the evidence shows Hazel Briley to have been, was excessive.

2. The defendants urge that "it was error to tell the jury that the parents had a right to anticipate that they would receive help and pecuniary benefits from deceased as long as she lived up to the death of the last surviving parent." The instruction, part of which is complained of, read as follows:

"In this connection, you are instructed that up to the time Hazel Briley would become twenty-one years of age her parents would be entitled to all of her services and to all of her earnings as a minor, but that their measure of

recovery is not limited to such pecuniary benefits as they might receive from Hazel Briley during her minority, but that the plaintiffs who are the parents of the deceased child had a right to anticipate that they would receive help and pecuniary benefit from her as long as she lived up to the death of the last surviving parent, and in estimating what amount might have been anticipated by the parents, either before Hazel Briley was twenty-one years of age or after she was twenty-one years of age, you are to exercise your own knowledge and experience in common with that possessed by the generality of mankind with respect to these matters, taking into consideration the age of the parents, their condition in life, the property or lack of property that they have, the condition of their health, the probable length of their lives or of that of the last survivor of them, the occupation of the father and his earning power, the disposition of the child toward her parents, whether it was affectionate or otherwise and whether it was such as prompted her to divide her possessions however small, or whether it was the opposite of this, and all other facts and circumstances adduced in evidence in the case; keeping in mind that it is not possible to itemize these matters or to make definite computations of pecuniary benefits, but only to allow such sum as in your judgment, as instructed by the court, would afford fair and adequate compensation to the parents for the damages which they might suffer by reason of the death of Hazel Briley."

When the entire instruction is considered in connection with that part of it which is objected to by defendants, it does not appear to have stated the law incorrectly. The plaintiffs had the right to expect that their daughter would contribute to their support. (*Railway Co. v. Fajardo,* 74 Kan. 314, 86 Pac. 301; *Griffin v. Brick Co.,* 90 Kan. 375, 133 Pac. 574.)

3. The defendants urge that "it was error to tell the jury that the plaintiffs would be entitled to all of the deceased's services and to all of her earnings as a minor without regard to whether the parents or either of them lived throughout the entire minority of the child." This is another complaint of the instruction which has just been quoted. The instruction concerning the right of the plaintiffs to the services of Hazel Briley did not incorrectly state the law. If the defendants had desired a modification of that instruction, it was their duty to request the court to give such a modification. That does not appear to have been done. They cannot complain of failure of the court so to do. (*State v. Pfefferle,* 36 Kan. 90, 12 Pac. 406; *State v. Ross,* 77 Kan. 341, 348, 94 Pac. 270; *State v. Page,* 80 Kan. 389, 391, 102 Pac. 780; *Hamilton v. Railway Co.,* 95 Kan. 353, 357, 148 Pac. 648; *State v. Taylor,* 119 Kan. 260, 237 Pac. 1053.)

4. The defendants argue that "it was error for the plaintiff to bring before the jury the suggestion that the defendants had indem-

nity insurance." F. H. Bishop, an eyewitness of the accident, was called by the plaintiffs. The defendants introduced a statement concerning the accident signed by him on the evening of the accident. After that statement had been introduced in evidence, the witness testified:

"Q. Mr. Bishop, about what time of the day was it when these men called at your house for the statement? A. The best I remember was between seven and eight o'clock; somewhere around near seven o'clock.

"Q. Did they tell you what they wanted the statement for? A. Yes, sir.

"Q. What did they say they wanted it for? A. He said it was the insurance company and he wanted a report. He said he was representing the insurance company and wanted a report.

"MR. GLEASON: We move the answer be stricken out."

There was further evidence concerning the statement. On the request of the defendants, the evidence was stricken out, and the jury was instructed to disregard it.

This court has held that it is error to refer to the fact that an insurance company is resisting a claim for damages for personal injury or wrongful death.

In *Smith v. Cement Co.,* 86 Kan. 287, 120 Pac. 349, the court said:

"Before a judgment will be reversed for misconduct of counsel of the prevailing party occurring at the trial it must be made to appear that such misconduct prejudiced the rights of the defeated party." (See, also, *Stafford v. Noble,* 105 Kan. 219, 182 Pac. 650.)

In *Townsdin v. Nutt,* 19 Kan. 282, the court declared that:

"Where evidence is erroneously received, and the court thereafter charges the jury to disregard such objectionable testimony, the admission of the testimony in the first instance is not necessarily a sufficient cause for the reversal of the judgment." (See, also, *Wallace v. Wallace,* 101 Kan. 32, 35, 165 Pac. 838, and cases there cited.)

5. The defendants argue that "it was error to admit the testimony of R. E. Campbell." The testimony complained of was as follows:

"Q. You may state, Mr. Campbell, what in your opinion was the rate of speed of the bus No. 164 of the Nussbaum Bros. at the time it struck Hazel Briley upon the assumption that the pavement at the intersection of First street and Millwood avenue was concrete with a rough surface and that the concrete pavement was a little wet with perhaps a few patches of ice where the skid marks on the pavement caused by putting on the brakes of the bus were about eighteen feet long. A. Well, I shouldn't think it would be going over eighteen or twenty miles an hour."

The witness testified that this depended on the condition of the ground and how the brakes were applied. The evidence was competent for the purpose of assisting the jury in determining the rate of speed at which the bus had been driven. Neither the brief nor the abstract shows any objection on the part of the defendants to that testimony. If the defendants had any objections to the evidence, they should have made it known to the court.

6. Complaint is made of the following instruction:

"You are further instructed that in determining the rate of speed at which Martin P. Nussbaum was driving said bus at the time of the accident, you may take into consideration, together with all of the other evidence in the case, the length of the skid marks made by the wheels of said bus when the said Martin P. Nussbaum threw on the brakes after he first saw Hazel Briley, and that you may also take into consideration the weight of said bus and the manner in which said brakes were applied."

The objection of the defendants to the instruction is that it gave particular prominence to that evidence, so much so that the judgment should be reversed for that reason. The evidence was competent. It was proper for the jury to consider it, and this court does not see wherein the defendants were in any way prejudiced by the attention of the jury being directed to that evidence by the trial court.

7. Another matter urged is that "special findings Nos. 4, 5, 6, 7, 8, and 9 are contrary to the evidence and unsupported by the evidence." Special questions were answered by the jury as follows:

"1. Was the defendant, Martin Nussbaum, guilty of any act of negligence? A. Yes.

"2. If you answer the first question in the affirmative, then state of what such act or acts of negligence consisted. A. Not taking due precaution at a street intersection.

"3. What act or acts, if any, on the part of the defendant, Martin Nussbaum, was or were the proximate cause of the accident? A. Failure to sound horn, check speed and observe the rights of pedestrians.

"4. Was the action of Hazel Briley in running without looking to the point where she was struck the proximate cause of her injury? A. No.

"5. At the time when Hazel Briley was struck by the bus, was she outside the intersection of Millwood avenue and First street? A. No.

"6. Was Hazel Briley ever in front of the bus after she left the sidewalk on the north side of First street? A. Yes.

"7. If you find that the bus of the defendants struck and injured Hazel Briley, then what part of the bus struck her? A. Inside of left front fender.

"8. At the time Hazel Briley was struck by the bus, where was she with reference to said bus? A. In front of bus.

Briley v. Nussbaum.

"9. Did the bus pass over the body of Hazel Briley? A. Yes.

"10. Did Hazel Briley at the time she left the sidewalk on the north side of First street and proceeded to the point where she was struck have judgment and intelligence enough to appreciate the danger of coming in contact with a moving bus of the kind and character of defendants' bus? A. Yes, if properly warned by approaching bus."

These were material questions of fact. If there was no evidence to support them, they should have been set aside. After a careful reading of the abstracts, this court is unable to agree with the defendants that there was no evidence to support those findings. There was evidence to support each one of them. On account of the numerous assignments of error which it is necessary for the court to discuss, it is not thought advisable to discuss each of these in detail and point out specifically the evidence which supported the answers to each of these questions.

8. The eighth matter complained of is as follows:

"Special finding No. 3 and the general verdict is contrary to the evidence and not supported by the evidence."

The defendants, to support this contention, argue that the negligence found in the answer to question No. 3 was not pleaded. The petition alleged that the defendant was negligent in running the bus at a high rate of speed; in not checking the speed of the bus; in not sounding a horn to warn pedestrians; and in not looking ahead. All of these things should have been done by Martin Nussbaum to protect pedestrians who might be crossing the street, and all were embraced in the answer to question No. 3 and all were embraced in the finding of the jury that Martin Nussbaum failed to observe the rights of pedestrians.

9. The defendants say:

"It was further error of the court to overrule the defendants' motion for a new trial because the court gave instruction No. 7 to the effect that if the defendants drove the bus across the intersection at a rate of speed in excess of six miles per hour they were guilty of negligence and if such act was the proximate cause of the injury to the plaintiffs' deceased, then the plaintiffs should recover."

To support this contention, the defendants further say:

"This was error. The statute was not intended for the protection or benefit of persons outside of the intersection and under the doctrine of the cases hereinafter cited one who is outside the intersection cannot predicate a charge of negligence upon the violation of this statute."

To support this argument, the defendants contend that Hazel Briley was outside the intersection when she was struck by the bus. The argument of the defendants was answered by the jury in the answer to question No. 5 in which the jury found that Hazel Briley was not outside the intersection of Millwood avenue and First street when she was struck by the bus.

10. Complaint is made of instruction No. 6 given by the court. That instruction submitted to the jury an ordinance of the city of Wichita, which provided:

"That no person shall operate any vehicle upon any street of the city of Wichita at a greater rate of speed . . . than is reasonably safe and proper, having due regard for the use and condition of the street and occupancy thereof at the time, nor at such a rate of speed as to endanger the life, limb or property of any person."

It was the duty of the defendants to operate their bus in the manner commanded by the ordinance. If there had been no ordinance, the court would have been warranted in giving an instruction imposing on the defendants the same obligation that was imposed by the ordinance. It was not error to instruct concerning the ordinance.

11. The defendants urge that the "deceased was guilty of contributory negligence." Hazel Briley was a little more than seven years old. She was going home from school. It was necessary for her to cross the street. In doing so, she followed the customary line of travel and was killed. She was not obliged to exercise the same degree of care that an adult should exercise. It was for the jury to say whether or not she was guilty of contributory negligence. This court cannot say that she was. In *Bellamy v. Railways Co.,* 108 Kan. 708, 196 Pac. 1104, the rule was declared to be that—·

"Infants of tender years are not presumed to have discretion, and are not, as a matter of law, held amenable to the disabling effects of contributory negligence. The question whether a seven-year-old child has sufficient capacity and discretion to render it guilty of contributory negligence is for the consideration of a jury."

The defendants urge that it was error to overrule their motion for a new trial. This matter is disposed of by the discussion of the other points argued.

The judgment is affirmed.

Dawson, J., dissenting.